STATE, PLAINTIFF, *v.* ROSS ET, DEFENDANTS.

Common Pleas Court, Cuyahoga County.

No. 73805.   Decided March 17, 1961.

380

Mr. *John T. Corrigan*, prosecuting attorney, by Mr. *Reuben M. Payne*, assistant prosecuting attorney, for the State.
Mr. *Frank G. Lyons*, for defendant Richard Ross.
Mr. *Sydney A. Hesse*, for defendant Christine Ross.

DANACEAU, J.   This cause was submitted to the Court, a Jury having been waived.

Christine and Richard Ross, wife and husband, were indicted and stand charged with four counts of Manslaughter in the First Degree, for unlawfully and unintentionally killing Shirley Ann, Edward, Richard and Nagel Franklin, their infant children, while engaged in the violation of certain statutes, to-wit:

Section 2151.42, Revised Code Neglecting or Mistreating a Child

Section 3113.01, Revised Code Neglect to Provide for Child

Section 3113.03, Revised Code Abandoning Child

The children, aged approximately 1, 2, 3 and 4 years, died by fire in the upstairs portion of a frame house in which they resided with their mother, the father living separately and elsewhere at the time. The principal facts are stipulated as follows:

"It is stipulated by counsel for the State and counsel for the defendant that on Thursday, November 10, 1960, at around eight o'clock p. m., Christine Ross put her four children to bed, and that a girl friend by the name of Mae Hathaway came up to her apartment and requested of Christine Ross to go next door with her to watch television; that she got her coat on and that she looked at the children and observed that they were asleep; that she and Mae Hathaway then went downstairs, it being approximately 8:25 or 8:30 at that particular time; that as she went downstairs to the first or second floor, she spoke to a girl by the name of Dorothy Smith, and requested of Dorothy Smith to listen out for the children; that she then went next door and watched a television program called 'The Real McCoys,' and was looking at 'Bachelor Father,' the time being approximately 9:10 or 9:15, when a girl by the name of Juanita Cunningham called and said that there was something wrong at her apartment; that she and the other girl left the neighbor's house and went next door and went up to the second floor, where she made an effort to get up to the apartment where her children were, and she was pulled back by Mae Hathaway and went back downstairs; that she wanted to go in again, but was restrained by the firemen from going in; that subsequently, a short time thereafter, the firemen brought the fire under control, which was at the premises there, and that they removed from the premises her four children.

* * * *

"It is further stipulated between counsel for the State and counsel for the defendants that when the children were removed to the morgue, in the pocket of the clothing of one of the children some live matches were found, and that the

child, Edward Ross, had been taken from the home in the blanket that was on the bed, and when the blanket was opened, two matches were found in or next to his body; which matches which were found in the pockets of one of the children and in or next to the child Edward Ross are contained in State's Exhibit 6,

"It is further stipulated between counsel for the State and counsel for the defendants that Captain Hubes and Lieutenant Stanton of the Cleveland fire prevention squad, particularly the arson division, made an examination of the premises at the defendants' residence, where the children were burned, and from their findings the origin of the fire appeared to be in two places in the apartment of the defendants, one, as you come up the steps and to the left in the apartment proper, and the other appeared to be in the area of the bed and the crib, as shown in one of the State's exhibits.

"It is further stipulated that Captain Hubes and Lieutenant Stanton would testify that in their opinion the probable cause of the fire, after their investigation, was children playing with matches.

"It is further stipulated that the matches contained in State's Exhibit 6 are wood house matches, and that if Mrs. Ross were called to testify, she would testify she has no knowledge of any wood matches being on the premises there. Is that correct?

"MR. HESSE. She never purchased any, never used any.

"MR. PAYNE. That she never purchased any or she never used any."

There are other stipulations pertaining to the residence elsewhere of the father, the actual separation, and other claims of the State that the father did not make adequate provision for his family or provide the necessary support.

Before the State of Ohio is entitled to a Verdict of Guilt of Involuntary Manslaughter, it must prove beyond a reasonable doubt that the unlawful acts, if any, relied on were the direct and proximate cause of death.

Proximate cause means the direct and efficient cause. "Direct" suggests unbroken connection or bearing straight upon an object; without an intermediary. "Efficient" has the meaning of "immediately effecting." Proximate cause excludes the indirect, the distant and the remote.

In order to constitute the crime of involuntary manslaughter it must be proved that the killing was the natural and probable or necessary consequence of the commission of the alleged unlawful acts and the direct and immediate result thereof. The unlawful acts must be such that would be reasonably anticipated by an ordinary prudent person as likely to result in such killing.

In *Black* v. *State*, 103 Ohio St., 434, syllabus 1, reads:

"1. Unlawful killing, as used in manslaughter, must be such as would naturally, logically and proximately result from the commission of some unlawful act as defined by statute, and such unlawful act must be one that would be reasonably ·anticipated by an ordinarily prudent person as likely to result in such killing."

In some civil cases dealing with the subjects of negligence, contributory, imputed, comparative, and the like, courts have occasionally extended or expanded the meaning of proximate cause and have drawn rather hazy dividing lines between that which is and that which is not proximate cause. The discussions in such civil lawsuits are of little or no help in a manslaughter case.

It is said in 40 C. J. S., 924:

"An unintentional homicide occasioned by negligence in the commission of an act lawful in itself will constitute involuntary manslaughter. The negligence is generally required to be of a higher degree than is required on civil issues, and is ordinarily required to be of a gross or flagrant character, unless the unlawful act is one likely to produce death."

Criminal statutes are to be interpreted strictly against the State and liberally in favor of the accused.

The acts and omissions, if any, of the defendants presented in the evidence does not in my opinion constitute the "direct and proximate cause" of the death of their children within the meaning of those words as applied to a charge of manslaughter.

At the time of the tragedy the father was living elsewhere, separate and apart from his family. The mother was in charge and went next door to watch television after putting the children to bed and making arrangements with a young lady "to listen out." There is not before this Court the slightest bit of evidence that any act or omission on the part of either the mother

or the father caused the fire which took the lives of their four children. There has been a horrible tragedy, but neither the law nor justice requires that we make the mother and father the "scapegoats."

I find the defendants, Christine and Richard Ross, not guilty on all four counts in the indictment,

It is urged by counsel for the State that in the event the defendants are found not guilty of the crime of manslaughter that the Court proceed to determine their guilt or innocence for violations of Sections 2151.42, 3113.01 and 3113.03, Revised Code, as included offenses.

The alleged offenses pertain to neglecting or mistreating a child, neglecting to provide for a child, or abandoning a child and are distinct and independent offenses of an entirely different class from that of manslaughter. They are not of the same general character.

*State* v. *Kuchmak*, 159 Ohio St., 363 (cited by State), states in syllabus 3:

"The doctrine of 'inferior degrees' or 'included offenses,' whereby an accused may be found not guilty of the offense charged but guilty of a lesser included offense, relates only to offenses of the same general character and not to distinct and independent offenses of different classes."

It is said in 16 O. J. S., 9:

"However, the doctrine of inferior degrees and offenses has never been applied to crimes which are so inherently and essentially different in their nature, character, and atrocity as to belong to an entirely different class. One crime cannot be considered as of an inferior degree to, or included in, another, where they belong to different and independent classes of crimes."

The Court does not consider the alleged violations of the foregoing neglect statutes as lesser included offenses of manslaughter and declines to pass on the guilt or innocence of the defendants with respect thereto.