STATE, PLAINTIFF, *v.* KOTOWSKI, DEFENDANT.

Common Pleas Court, Cuyahoga County.

No. 75869.  Decided June 5, 1962.

156

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. John J. McCarthy*, assistant prosecuting attorney, for plaintiff.

*Mr. Norman A. Ryan* and *Mr. Sterling C. Prestage*, for defendant.

(BAYNES, J., of Madison County, sitting by assignment.)

BAYNES, J. This cause is submitted to the Court on waiver of jury trial.

Defendant was indicted under Section 2901.06, Revised Code, for Manslaughter in the first degree.

We would, perhaps, have been justified in directing a ver-

dict of acquittal at the close of the State's case for failure to prove the substance of the crime—the corpus delicti, as was moved.

The facts are, in substance, uncontroverted. Charles and Margaret Mary Kotowski were husband and wife and resided together in a home owned by them in Oakwood Village. He was 50 and she was 47 years of age on Wednesday, January 10, 1962. On that day from sometime in the afternoon to about 11 p. m., defendant and decedent were drinking beer. There had been some arguing about various things as they watched television, but primarily about her excessive drinking.

At about 11 p. m., defendant asked decedent if she was too drunk to make some potato pancakes. She said no and went into the kitchen to do so. A short while later defendant smelled smoke. When he entered the kitchen, decedent was leaning against the stove, her torso was somewhat over the stove top surface, the pancakes were smoking, and a pot holder in her right hand was in the flames and starting to burn.

Defendant either pushed, shoved or hit the decedent to get her away from the stove. She fell to the floor and may have struck her head on a kitchen appliance or piece of furniture. While defendant was tending to the pancakes, hot pad and stove, decedent attempted to sit up but fell back and hit her head on the floor.

Defendant thought decedent might be drunk and attempted to give her a glass of water, which she didn't drink or attempt to drink. He then put a sheet on the davenport and carried decedent to it. She was bleeding at the nose, which she had been doing for several days. Defendant then continued to watch television. When he decided to go to bed, thinking decedent was drunk, he put a blanket over her and went upstairs to bed.

The next morning about 8:00 a. m., when defendant arose, decedent had not aroused, she was bleeding at the nose, and other indications were that something was wrong. He called an ambulance and cleaned her up as best he could. She was taken to Bedford Hospital. Upon examination by the family physician and his consultation with Dr. Alexander Ling, a neurological surgeon, it was decided to remove her to St. Alexis Hospital for operative procedures. The operation was

performed about 5:00 p. m. on Thursday, January 11, and at 7:00 a. m. Friday, January 12, she expired.

Dr. Ling testified that the blood clot he removed was located at the left frontal part near the center of the skull above the left ear. The Court inquired as to what the doctor meant by "massive clot." He testified:

"I don't recall the exact volume, but the estimate of volume we made at the time of surgery was the clot roughly would fill two water glasses.

". . .

"A water glass being estimated to contain approximately 180 cc.'s."

(180 cc.'s equals six fluid ounces.)

The doctor also testified:

"There was some fluid. The large portion of this clot was solid clot."

". . . the fact that the clot that was removed, to me appeared to be at least five or six days old . . . Our inquiry then, of course, was directed at the possibility of her sustaining a previous injury."

The doctor gave his opinion to a hypothetical question that the decedent's death was a result of striking her head on a fixed object that her condition "could" have been accelerated or aggravated. It was, however, also his opinion that any such striking would not tend to increase the volume of the clot or cause further hemorrhage.

The doctor, as to cause of death, said that, ". . . intracranial pressure caused by the clot . . . had a direct bearing with the cause of . . . death." He also stated that a chronic clot results in an adjustment by the brain, which led him to believe that the clot may have been older than the history would indicate.

The testimony of Dr. Paul J. DeWitt, a pathologist, on the staff of the Cuyahoga County Coroner's office, was adduced on behalf of the State. In general, it may be observed to have been compatible and not contradictory to that of Dr. Ling. It should be borne in mind that Dr. Ling did not have the benefit of the brain exposure that Dr. DeWitt had in performing his autopsy and in making his consequential findings. In answer

to a question relating to the condition of brain as affected by the clot, Dr. DeWitt said:

"There is an associated defect in the cortical markings in the brain in this area. The right cerebral hemisphere shows flattening of the gyri and narrowing of the sulci. There was pressure which flattened the right side of the brain and there was a concavity in the area of the defect."

The testimony of defendant was corroborated that decedent had suffered a scalp injury on December 19, 1961, and was treated in the emergency room of the Bedford Municipal Hospital. The means by which this injury was received was fully testified to by defendant. It should also be noted that the medical records of that hospital contained the notation that on January 11 when she was admitted that her "breath had a marked alcohol odor."

The testimony of defendant was also to the effect that late on the Friday night (January 5), preceding the Wednesday in question, decedent had come home with some teeth broken, her eyes and nose bruised, and in an intoxicated condition. This was not substantially inconsistent with Dr. DeWitt's testimony as to the age of apparent latent bruises, contusions and scars on various parts of decedent's body.

There is other credible testimony favorable to the defense as to contusions, scars, etc., but it would not seem necessary to delineate more.

Under the facts of this case, manslaughter may be defined as an unintentional killing in the commission of an unlawful act which is the proximate cause of the ensuing death. See 27 Ohio Jurisprudence (2d), 578, Sec. 27, and cases cited. The only unlawful act, which the facts in evidence vaguely tend to prove, would be a battery committed on the decedent by the defendant at the gas range in the kitchen.

A battery is the unlawful touching of the person of another it being the aggressor's intent to inflict injury on the other. Such intent may be inferred from the aggressor's conduct and he need not act in anger or with malice. 5 Ohio Jurisprudence (2d), 103, Section 4.

Upon considerable reflection, we fail to see how the evidence is even in equipoise, let alone tending to a preponderance,

and does not begin to approach that point where reasonable minds could say that there was raised the issue of an unlawful act on defendant's part by evidence beyond a reasonable doubt.

However, assuming for the purposes of argument that the issue of a battery could be said to be proved by evidence beyond a reasonable doubt, the burden was still upon the State to prove that the battery was the proximate cause of the death of Margaret Mary Kotowski.

The rule is that the cause of death must be such as would naturally, logically and proximately result from the commission of the unlawful act which must have been one that would reasonably be anticipated by an ordinarily prudent person to likely result in such death. 27 Ohio Jurisprudence (2d), 585, Section 32.

We think the expert medical evidence we have set out and which may otherwise be found in the record affirmatively shows that the "massive" or "huge" subdural hematoma arising out of a series of trauma suffered by the decedent unconnected with any wrongful act of the defendant, either on the night of January 10, 1962, or prior thereto, was the sole direct and proximate cause of decedent's death. Further, that the act of defendant in causing decedent to fall to the floor, if it did so cause her to fall, was not such act which an ordinarily prudent person could reasonably anticipate would likely result in death.

Compare *State* v. *Ross*, 87 Ohio Law Abs., 379, 176 N. E. (2d), 746, 16 Ohio Opinions (2d), 337 (Common Pleas Court, Cuyahoga County, Danaceau, J.).

The defendant is entitled, accordingly, to a verdict of not guilty.

Judgment is accordingly entered.