130 N.J. Super. 174 (1974)
325 A.2d 856
STATE OF NEW JERSEY, PLAINTIFF,
v.
DAVID BURTON, DEFENDANT.
Superior Court of New Jersey, Law Division.
September 10, 1974.
*175 Mr. Harry Robinson, III, Assistant Prosecutor for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. Charles S. Lorber for the defendant (Mr. Edmond M. Kirby, Deputy Public Defender of Essex Region, attorney).
MARZULLI, J.C.C., Temporarily Assigned.
A pretrial motion has been made by defendant for the dismissal of counts 1 and 2 of Indictment #2283-73 charging him with the murders of Donald McGill and Lamar Freeman who were killed by the police while they and defendant were committing an armed robbery. This motion was made by defendant based on his assumption that the State will try the case *176 on the theory of felony murder. The indictment returned by the grand jury is in the short form and the State contends that this does not bind the State to a particular theory of murder. It is the State's contention that if the court agrees with defendant's position with regard to the interpretation of N.J.S.A. 2A:113-1, the State will try the case on the theory of vicarious liability. Therefore, in this regard the State urges that this court follow the reasoning of the California courts and permit the State to submit to the jury the question whether the intentional acts of defendant or his co-felons were done with a conscious disregard for life during the commission of a felony.
The court has, however, been advised that the prosecutor has elected to proceed on the theory of felony murder.
It is defendant's contention that as a matter of law he cannot be charged with the murders of his two co-perpetrators whose death occurred as a result of police action.
For the purpose of this motion the following facts have been stipulated to by both the State and defendant.
On February 20, 1974 defendant, McGill and Freeman robbed at gunpoint one Steven Killen. Killen was a uniformed driver for the United Parcel Service. Defendant and his two co-felons took Killen's uniform and truck. They then bound and handcuffed Killen, placed him in the back of his truck and forced him to accompany them to Verona. In Verona they entered an establishment known as Rose's Jewelry Store. At that time Burton was wearing Killen's uniform and carrying Killen's clipboard. In the store defendant Burton stayed in front with the counter girl while his co-felons went to the rear of the store. While in the store defendant and his co-perpetrators committed an armed robbery of the person of one Harvey Bressman. They then attempted to commit an armed robbery of the jewelry store.
While the robbery of the jewelry store was in progress the police arrived. When they entered the store defendant was ordered by the police to place his hands upon the counter. Defendant complied. McGill and Freeman started to shoot *177 at the police. A gun battle ensued in which McGill and Freeman were killed. During the gun battle defendant fled the scene and was apprehended under a picnic table in the International House of Pancakes where the knife that he had been holding in his hands at the time of the robbery was recovered. Defendant knew that his co-perpetrators were armed and, in fact, had used the guns in the commission of the iintial armed robbery and kidnapping of Killen and in the attempted robbery of Rose's Jewelry Store.
The issue before this court is: if a felon is shot and killed during the commission of a robbery by the police, can his death be imputed to his co-felon under the felony murder statute? The answer to this question will be based upon the court's interpretation of the Legislature's intent when it enacted N.J.S.A. 2A:113-1 and 2. In making that determination this court is acutely aware that it is the obligation of the court to follow the legislative intent when that intent has been clearly expressed, despite the court's opinion of what the law should be.
It is of paramount importance to determine whether the Legislature intended that criminal responsibility in this type of case should be based upon the agency theory or the proximate cause theory. The agency theory, simply stated, seeks to hold a defendant responsible when the act of killing is either that of defendant or someone acting in concert with him. See Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (Sup. Ct. 1958), and 56 A.L.R. 3rd 249. This would render the felony murder statute inapplicable where the killing was done by a third person in resistance to the felony.
The proximate cause theory states that a defendant may be held accountable for the proximate consequences of his activities and that a foreseeable consequence may be a killing by one resisting the felony. See Commonwealth v. Redline supra; Commonwealth v. Moyer, 357 Pa. 181, 53 A.2d 736 (Sup. Ct. 1947), and Johnson v. State, 386 P.2d 336 (Okl. Cr. Ct. 1963).
*178 A reading of our statute clearly indicates that the Legislature intended to extend criminal accountability beyond that imposed upon a felon by the common law. The New Jersey statute contains three clauses which are applicable to this case. The first clause reads as follows:
If any person, in committing or attempting to commit arson, burglary, kidnapping, rape, robbery, sodomy or any unlawful act against the peace of this State, of which the probable consequences may be bloodshed, kills another, * * *.
It is apparent that this clause embodies the traditional concept of felony murder under the common law. The clause has both a subject and a predicate which demonstrate a direct causal connection between the criminal conduct and the homicide. Therefore, this clause standing alone would indicate a legislative intent to follow the agency theory of felony murder.
This clause is followed immediately by a second clause which reads:
* * * or if the death of anyone ensues from the committing or attempting to commit any such crime or act; * * *
This clause has been commonly referred to as the "ensues" clause. In interpreting this clause it is important to keep in mind that the Legislature used the word "death" as opposed to such words as killing, homicide or murder. It is logical to assume that the Legislature specifically chose the word "death" so as to extend the culpability of a defendant to all deaths, be they felonious, accidental or justifiable, which occur during the commission of certain offenses. In addition, application of the agency theory would render the "ensues" clause mere surplusage. Under the agency theory all circumstances would be covered by the first clause. Therefore, the "ensues" clause evidences a legislative intent to adhere to the proximate cause theory of felony murder.
This interpretation of the statute has been followed by two reported cases in New Jersey. In State v. McKeiver, *179 89 N.J. Super. 52 (Law Div. 1965) defendant was charged with felony murder after a victim of an armed robbery died of a heart attack. The court stated:
The rule places upon a man committing a felony, or attempting to commit a felony, the hazard of being guilty of murder if he creates any substantial human risk which would actually result in the loss of life; * * * The intent to avoid all personal harm, formed in the mind of the transgressor at the time he embarks upon such a felony, is no reasonable safeguard that death will not result from his illegal actions. [at 55]
In State v. Kress, 105 N.J. Super. 514 (Law Div. 1969), the court read N.J.S.A. 2A:113-1 to apply to a situation in which a victim of an armed robbery was shot and killed by police officers in an attempt to thwart the robbery.
It is clear that our statute is not limited by the confines of felony murder under the common law. It is well within the power of the Legislature to hold liable for murder those persons who embark on a course of conduct evidencing "a man-endangering-state-of-mind." Perkins, Criminal Law (2 ed. 1969), at 46. An armed robbery involving the use of firearms is such a course of conduct.
The third phrase of the statute reads as follows:
* * * then such person so killing is guilty of murder.
Under the proximate causation theory the clause "such person so killing" does not refer to the person who actually pulled the trigger but rather to the felons who embarked on the course of conduct which precipitated the death. It is evident that only by utilizing the proximate cause theory may both the "ensues" clause and the final phrase be given their full and independent meanings.
A review of the statutory history of our murder statute would indicate that the same "ensues" clause has remained intact since the enactment of the murder statute in 1800. This clause has continued in all supplements and amendments *180 to the murder statute from that time until the present.
A study of the appropriate statutes in other jurisdictions indicates their legislative intent to be different from that of New Jersey. In Pennsylvania the basic determination of the fact of murder is to be made according to the rules of the common law. The defense disregards the distinction between Pennsylvania and New Jersey and, therefore, its reliance on the Pennsylvania decision in Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (Sup. Ct. 1958), which found that a defendant could not be liable for the death of his accomplice who was shot by the police during a gun fight is misplaced.
Defendant also attempts to rely upon New York decisions. A reading of the New York statute shows that it expressly excludes the death of participants in a felony from the ambit of the felony murder statute.
That the "proximate cause" interpretation of the statute is correct is bolstered by the sweeping changes that the proposed New Jersey Penal Code would make in the present murder statute. Section 2C:11-3a(4) of the proposed Code covers the felony murder situation and specifically excludes felons from liability for the deaths of their co-felons. It is also significant that the "ensues" clause present in every revision of the murder statute in this State has been deleted. The comment of the Code recognizes that the present statute embodies a broad felony murder rule and states that the proposed Code advances a new approach.
This court is cognizant of the recent decision of State v. Suit, 129 N.J. Super. 336 (Law Div. 1974), in which the court found that defendant could not be charged with the murder of his co-felon killed by a victim of the robbery during the course of the felony. However, the court feels that the facts of the instant case are distinguishable from those of State v. Suit.
In the instant case defendant was armed as were his two co-felons, and he was fully aware that his co-perpetrators *181 had guns in their possession and had demonstrated their intention to use them. In addition, the gun battle was initiated by defendant's co-felons. This fact situation places the case squarely within the ambit of State v. McKeiver, supra, because defendant, being fully cognizant of the aims of his co-felons and the means to be employed by them, assumed the hazard of anyone dying as a result of their actions.
In view of the language of the statute which this court feels plainly expresses the intent of the Legislature, defendant's motion to dismiss the first and second count of the indictment is denied.