135 N.J. Super. 224 (1975)
343 A.2d 110
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEONEL CANOLA, A/K/A LEON VASQUEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 1974.
Decided June 13, 1975.
*226 Before Judges COLLESTER, LORA and HANDLER.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Harvey I. Marcus, Designated Attorney, of counsel and on the brief).
Mr. Joseph C. Woodcock, Jr., Bergen County Prosecutor, attorney for respondent (Mr. Adam Lawrence, Assistant Prosecutor, on the brief).
*227 The opinion of the court was delivered by COLLESTER, P.J.A.D.
Defendant Leonel Canola, also known as Leonel Vasquez, was found guilty by a jury of the felony murders of Michael Bahtiarian and Harold Lloredo.[1] He was sentenced to concurrent terms of imprisonment for life. This appeal followed.
The State's proofs showed that at approximately 9:50 A.M. on November 16, 1971 two armed men entered a jewelry store in Englewood and held up Michael Bahtiarian, the owner, and Aram Bagdasarian, an employee. Bahtiarian and Bagdasarian were forced into the back room where they were relieved of their personal jewelry and money. Two other men then entered the store carrying canvas bags and began to collect jewelry in the display cases. Bahtiarian was compelled to open one of the safes. While the robbery was in progress a delivery man and a salesman entered the store and were forced at gunpoint to the rear of the store. After three of the robbers left the store Bahtiarian grappled with the fourth man and Bagdasarian went to the aid of his employer. When the robber called for assistance one of his accomplices reentered the store and shot Bahtiarian. Bahtiarian, who had a pistol concealed on his person, then drew the weapon and shot his assailant, who ran from the store and collapsed and died on the sidewalk. Bahtiarian, who was mortally wounded, fell to the floor. The three other robbers escaped with jewelry valued at $65,000.
The deceased gunman was identified as Harold Lloredo who had resided in Elizabeth. On the day following the crime Detective Cubelo questioned Caesar Echevarria, Lloredo's former roommate. Echevarria told the detective he had been in defendant's New York apartment the night before the holdup with four men who were planning the robbery and identified them as Harold Lloredo, Fernando *228 Geraldo,[2] a man known as "Toston,"[3] and defendant. He also told Cubelo that Lloredo said he would be leaving for Spain with $35,000 or $40,000 after the robbery. Echevarria said he had been in Canola's apartment when defendant returned after the robbery carrying a bag filled with jewelry and that Canola said he believed that Lloredo had been killed. Thereafter, Cubelo and other police officers, accompanied by Echevarria, went to defendant's apartment in Queens, New York. Ottoniel Trujillo, Canola's roommate, informed them that defendant had given him a watch and had gone to his brother's apartment in the Bronx, taking with him a bag of jewelry. The police then went to Jamie Canola's apartment where during a search for defendant they found a bag containing the stolen jewelry. When shortly thereafter Canola entered the apartment he was placed under arrest.
According to the testimony of the State's witnesses Canola confessed to his participation in the crimes charged. The first confession was made orally to Detective Cubelo at the New York police precinct immediately following defendant's arrest. The second confession was made the following day after defendant was returned to New Jersey when Canola was questioned by Assistant Prosecutor Buckley. His statement was recorded and transcribed by a court reporter.
In his confessions defendant admitted the robbery had been planned with Lloredo, Geraldo and Toston in his New York apartment. On the following day they drove to Englewood using two cars. Canola said Lloredo and Geraldo entered the jewelry store first and held up the persons inside. He and Toston then entered and collected jewelry in bags. When he, Toston and Lloredo left the store, Geraldo remained behind. He heard Geraldo call out to Lloredo, who reentered the store. Shots were then fired. Toston and *229 Geraldo fled in one of the cars. Canola walked away with a bag of jewelry and took a bus to New York.
Defendant, testifying in his own behalf, denied that he participated in the crimes. He said that he accompanied Lloredo to Englewood because Lloredo told him he had some business there. They were joined by Geraldo and Toston, who were in another car. Canola said when they arrived in Englewood Lloredo left, telling him to remain in the car. A short time later Geraldo and Toston came to the car with three blue bags. They told him Lloredo would return later and then drove him to his New York apartment where Geraldo gave him one of the bags to hold for Lloredo. Canola said he did not realize a robbery had taken place until he opened the bag and found that it contained jewelry.
Several of the points urged by defendant on this appeal as grounds for a reversal can be disposed of summarily, namely; (1) error in granting the State's motion to sever counts charging armed robbery from trial of the indictment; (2) error in the questioning of witnesses by the trial judge; (3) error in the admission into evidence of a knife, gun and bullets found at the scene of the crime, and (4) error in the admission into evidence of photographs of the deceased victims. We have carefully considered the arguments advanced by defendant in support of each point and find them to be totally lacking in merit.
Defendant also contends the trial court erred in denying his motion to suppress evidence obtained as a result of a warrantless search of his New York apartment. He claims the entry into the apartment was illegal and that all evidence which followed, including defendant's confessions, were "fruit of the poisonous tree" and therefore inadmissible. He argues that no probable cause existed to search the premises because there was no proof that Echevarria was a reliable informer and there was no independent effort by the police to corroborate the information received from the informer. We find no merit in this argument. Echevarria was not the traditional police informer whose disclosures of criminal *230 activity require some verification of his trustworthiness in order to establish his credibility. He was a citizen-informer who occupies a different status. See generally, State v. Lakomy, 126 N.J. Super. 430, 434-437 (App. Div. 1974). He furnished relevant information to the police and agreed to point out defendant's New York apartment to the officers and to identify the defendant. Accordingly, there was no need to verify his credibility and reliability before action was taken by the police. Based on such information and the independent knowledge of the police concerning the details of the crime there was sufficient probable cause to arrest the defendant. Having learned the names and addresses of two of the robbers, the police were in hot pursuit and continuously followed a trail from Elizabeth to New York. From the deceased gunman's statement to Echevarria the police were justified in believing that the robbers, who were Colombian nationals, had planned to leave the country after converting the stolen jewelry into cash. Under such circumstances it is clear that the exigencies of the situation made entry into defendant's apartment without a search warrant imperative. Maryland Penitentiary v. Hayden, 387 U.S. 294, 298-299, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782, 787 (1967).
Defendant further asserts the trial judge erred in ruling that his two oral confessions had been made voluntarily and were admissible as evidence against him. He argues that such testimony should not have been permitted because, contrary to the trial court's findings, (1) the language used in warning him of his constitutional right to remain silent did not comply with the mandate of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) there was no knowing waiver of his constitutional rights because he did not understand the felony murder doctrine; (3) the confessions were induced after he was confronted with illegally seized evidence, and (4) the confessions were made during a period of illegal delay in taking defendant before a magistrate for arraignment.
*231 We find no merit in any of the arguments raised by the defendant. A reading of the record of the voir dire hearings supports the court's findings that defendant was fully advised of his constitutional rights by Detective Cubelo and that he knowingly and voluntarily waived such rights before his oral confession. While the trial judge concluded that the warnings given thereafter by the assistant prosecutor were not in the precise context of Miranda, the court properly held that the prior warnings given by Cubelo and a New York magistrate the previous day were sufficient to make the second confession admissible. See State v. Magee, 52 N.J. 352, 374 (1968), cert. den. sub nom. Magee v. New Jersey, 393 U.S. 1097 (1969). Defendant's claim that he did not waive his constitutional rights because he did not understand the felony murder doctrine is untenable. In State v. McKnight, 52 N.J. 35, 55 (1968), the court held that if a defendant was given the Miranda warnings, his waiver is no less voluntary, knowing and intelligent because he misconceived the inculpatory thrust of the facts he admitted. See also, State v. McRae, 276 N.C. 308, 172 S.E.2d 37, 40-41 (Sup. Ct. 1970). Defendant's argument that his confessions were induced after he was confronted with illegally seized evidence is not supported by the record. It is also clear that there was no unreasonable delay in bringing defendant before a magistrate. Moreover, if there was a delay it would be only an element to be considered in determining whether the confession was made voluntarily. State v. Jones, 53 N.J. 568, 570-573 (1969). We are satisfied and hold that the testimony of defendant's oral confessions was properly admitted into evidence.
Defendant contends the trial court erred in denying his motion to dismiss the second count of the indictment charging him with the felony murder of Harold Lloredo. He argues here, as he did below, that he cannot be held for felony murder as a matter of law because Lloredo was shot and killed by Bahtiarian, one of the victims of the armed robbery. In denying the motion the trial court held the language *232 of N.J.S.A. 2A:113-1, particularly the clause, "if the death of anyone ensues from the committing or attempting to commit any such crime or act," (hereinafter referred to as the "ensues clause") indicated a legislative policy which holds one (and others in concert with him) who deliberately commits an inherently violent act fully responsible for the probable consequences of the act.
The question of whether a participant in an armed robbery can be held liable for murder when his co-participant is killed by an intended victim in an attempt to abort an armed robbery has not heretofore been considered by our appellate courts.[4] The resolution of the question depends upon the Legislature's intent when N.J.S.A. 2A:113-1 was enacted.
The statute, in pertinent part, reads as follows:
If any person, in committting or attempting to commit arson, burglary, kidnapping, rape, robbery, sodomy or any unlawful act against the peace of this state, of which the probable consequences may be bloodshed, kills another, or if the death of anyone ensues from the committing or attempting to commit any such crime or act; * * * then such person so killing is guilty of murder.
At both common law and today by statute all participants in any of the felonies referred to in the statute are equally guilty as principals. Roesel v. State, 62 N.J.L. 216, 222 (E. & A. 1898); N.J.S.A. 2A:85-14.
Defendant bases his argument upon the "agency theory" of liability adopted in Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (Sup. Ct. 1958), in felony murder cases. In that case defendant and a co-felon, during the commission of an armed robbery, engaged in a gun battle with the police during which the co-felon was killed by police bullets. In *233 finding defendant not guilty of a charge of murder of the co-felon the court held that in order to convict for felony murder the killing must have been done by defendant or someone acting in concert with him in furtherance of the felonious undertaking; that the death must be a consequence of the felony and not merely coincidental, and that a justifiable homicide could not be availed of to support a charge of murder.
We are satisfied that defendant's reliance upon Commonwealth v. Redline, supra, is misplaced because the statute upon which the court based its decision differs from our statute. The Pennsylvania statute provides that "a criminal homicide constitutes murder of the first degree if the actor is engaged in or is an accomplice in the commission of, or an attempt to commit * * * robbery (and other designated felonies)." See Pa. Stat. Ann. Tit. 18, § 2502. Numerous courts of other jurisdictions which have the same or similar statutes follow the agency theory adopted in Redline, while others recognize the concept of proximate cause as a basis for imposing criminal liability under the felony murder rule. It is noteworthy that some of the courts which have adopted the Redline agency theory formerly followed the proximate cause theory for imposing criminal liability under the felony murder rule.[5] For a review of the felony murder doctrine involved, see Annotation, "Felony-Murder  Killing by Another," 56 A.L.R.3d 239 (1974).
N.J.S.A. 2A:113-1 has no counterpart among the felony murder statutes in other jurisdictions which have considered murder prosecutions predicated upon a killing of an accomplice by one resisting a felony. The distinguishing feature *234 in our statute is the "ensues clause," referred to above. Thus cases of other states are of no aid in deciding the question presented in the instant case.
Our statute has been interpreted in three reported opinions where defendants moved to dismiss indictments charging them with felony murder and the trial judges differed in their conclusions. In State v. Kress, 105 N.J. Super. 514 (Law Div. 1969), three bank robbers were indicted for the murder of a bank official who was shot and killed by police when one of the robbers used him as a shield while attempting to escape after committing an armed robbery. Defendants moved to dismiss the indictment, contending that since the death of the bank official was caused by a policeman's bullet, a charge of murder against them had no basis in law. In denying the motion the trial judge held that the interpretation to be given N.J.S.A. 2A:113-1, in view of the "ensues clause," justified a charge of murder against defendants.
The trial judge in State v. Suit, 129 N.J. Super. 336 (Law Div. 1974), reached a different result. In that case defendant, as here, was indicted for murder when his co-participant in an armed robbery was shot and killed by one of the victims in an attempt to abort the robbery. In granting a motion to dismiss the indictment the trial judge concluded the defendant could not be held to answer a charge of felony murder since the act that resulted in his accomplice's death could not be directly attributable to defendant in furtherance of the common plan to commit robbery, nor could defendant be said to be the "person so killing" under the language of the statute, and that the victim's voluntary responsive actions resulted in what might be termed a justifiable homicide.
In State v. Burton, 130 N.J. Super. 174 (Law Div. 1974), defendant was indicted for the murder of two of his accomplices who were killed by the police while they and the defendant were committing an armed robbery. In denying a motion to dismiss the indictment the trial judge stated *235 that a reading of the statute indicated the Legislature intended to extend criminal accountability beyond that imposed upon a felon under the common law. The judge held that the "ensues clause" evidenced a legislative intent to adhere to the proximate cause theory of felony murder and to extend the culpability of a defendant to all deaths which occurred during the commission of any of the offenses designated in the statute.
A resolution of the narrow issue here involved depends upon the intention of the Legislature when it included the "ensues clause" in the statute. The clause was incorporated in the statute when it was first enacted in 1796 and has been continued in all supplements, amendments and revisions of the statute. We think it is clear that the clause was not intended to be mere surplusage where it appears that the other provisions of the statute, standing alone, embody the concept of felony murder under the common law. Such an interpretation would violate one of the cardinal rules of statutory construction that full force and effect must be given, if possible, to every word, clause and sentence of a statute. A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided. Hoffman v. Hock, 8 N.J. 397, 406 (1952).
The proximate cause theory, simply stated, is that when a felon sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, the felon, and those acting in concert with him, should be held responsible for any death which by direct and almost inevitable consequences results from the initial criminal act.
We agree with the court's interpretation of the statute in State v. Burton, supra. In our view the statute indicates an intention on the part of the Legislature to extend criminal responsibility beyond that imposed upon a felon at common law and to hold liable all participants in an armed robbery for deaths which occur during the commission *236 of the crime. We conclude that the trial judge properly denied the motion to dismiss the indictment.
Lastly, it is urged that the trial judge erred in imposing two concurrent life sentences. He relies upon State v. Mills, 51 N.J. 277 (1968), where multiple deaths resulted from a single act of arson. We conclude that the argument lacks substance. It is clear that two distinct homicides were committed by separate and distinct criminal acts and the trial judge properly sentenced defendant for each murder. State v. Carter, 54 N.J. 436, 451-452 (1969), cert. den. sub nom. Carter v. New Jersey, 397 U.S. 948, 90 S.Ct. 969, 25 L.Ed.2d 130 (1970).
Affirmed.
HANDLER, J.A.D. (dissenting in part and concurring in part).
I would reverse the conviction of defendant upon the second count of the indictment. This charged him with the felony murder of one of his accomplices, Harold Lloredo. I would reverse substantially for the reasons set forth in the decision of Judge McGowan in State v. Suit, 129 N.J. Super. 336 (Law Div. 1974).
A majority of the jurisdictions that have considered this issue adhere to the view that in applying the felony murder doctrine a felon cannot be found guilty for the death of an accomplice occurring during the commission of the felony. E.g., Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (Sup. Ct. 1958); Commonwealth ex rel. Smith v. Myers, 438 Pa. 218, 261 A.2d 550 (Sup. Ct. 1970); Commonwealth v. Banks, 454 Pa. 401, 311 A.2d 576 (Sup. Ct. 1973); Sheriff, Clark County v. Hicks, 89 Nev. 78, 506 P.2d 766 (Sup. Ct. 1973); People v. Hickman, 12 Ill. App.3d 412, 297 N.E.2d 582 (App. Ct. 1973); People v. Hudson, 6 Ill. App.3d 1062, 287 N.E.2d 41 (App. Ct. 1972); People v. Morris, 1 Ill. App. 3d 566, 274 N.E.2d 898 (App. Ct. 1971); People v. Washington, 62 Cal.2d 777, 44 Cal. Rptr. 442, 402 P.2d 130 (Sup. Ct. 1965); Commonwealth v. Balliro, 349 Mass. 505, 209 N.E.2d 308, 14 A.L.R.3d 640 (Sup. Jud. *237 Ct. 1965); People v. Austin, 370 Mich. 12, 120 N.W.2d 766 (Sup. Ct. 1963); People v. Wood, 8 N.Y.2d 48, 201 N.Y.S. 2d 328, 167 N.E.2d 736 (Ct. App. 1960); cf. Alvarez v. District Ct. etc., Denver, 525 P.2d 1131 (Colo. Sup. Ct. 1974); State v. Garner, 238 La. 563, 115 So.2d 855 (Sup. Ct. 1959); State v. Majors, 237 S.W. 486 (Mo. Sup. Ct. 1922); Commonwealth v. Moore, 121 Ky. 97, 88 S.W. 1085 (Sup. Ct. 1905).
It is, I believe, unduly stressed by the majority opinion that the New Jersey statute, N.J.S.A. 2A:113-1, because of the inclusion of the "ensues clause," differs from the law applicable in other states, which have adopted the so-called "agency theory" of felony-murder. It does not follow, however, that a different result is dictated by this statutory difference. The courts which have taken this approach have not emphasized such distinctions. Moreover, in those jurisdictions which espouse a "proximate cause" approach to felony-murder, as recommended by the majority here, the actuating factor was not a statutory provision similar to that of the "ensues clause" of the New Jersey statute. E.g., Johnson v. State, 386 P.2d 336 (Okl. Cr. App. 1963); State v. Morran, 131 Mont. 17, 306 P.2d 679 (Sup. Ct. 1957); Miers v. State, 157 Tex. Cr. R. 572, 251 S.W.2d 404 (Crim. App. 1952); Wilson v. State, 188 Ark. 846, 68 S.W.2d 100 (Sup. Ct. 1934).
In my view the "ensues clause" is not the catalyst which transmutes criminal culpability in the context of a felony-murder from agency to proximate cause. No cogent argument has been presented that, by the inclusion of the language of the "ensues clause," the Legislature intended to affix criminal responsibility upon a felon for murder in the highest degree for the justifiable, accidental or unintended death of a co-felon on the theory of proximate cause. Rather, the purpose of the "ensues clause" would appear to be a legislative attempt to insure a broadened scope of criminal responsibility with respect to a defendant who, as a primary actor or in concert with or through the criminal agency of *238 another, actually or constructively, but in furtherance of the felony, causes the death of another person.
While the statute, even without the "ensues clause," might well be so interpreted and applied, it was within the legislative province to give unmistakeable and emphatic expression of this intent. It does not follow, therefore, as thought by the majority and expressed in State v. Burton, 130 N.J. Super. 174 (Law Div. 1974), that the "ensues clause" is mere surplusage and acquires a sensible meaning, together with the final phrase of the statute, only upon a thesis of proximate cause. On the contrary, in my view the "ensues clause" underscores a legislative intent, in defining felony murder, to expand the class of victims whose death might occur in the course of a felony and to cover killings which might otherwise be considered too distantly connected with the felony, provided they fall within its res gestae. So understood, the entire statute makes reasonable sense when limited only to a defendant who actually participates in the killing, or does so through the agency of a partner in the crime, whether as a principal or an aider and abettor, whether directly or indirectly, by acts or conduct in furtherance of the commission of the felony.
In other respects, I concur in the majority opinion.
NOTES
[1] Harold Lloredo was also known as Harold Vollalaros, Harold Gomez, and Harold Cecedio.
[2] Fernando Geraldo was also known as Jesus Borbon.
[3] "Toston's" name was Inacio Cadavid, also known as Inacio Rodriguez.
[4] In State v. Bunk, 4 N.J. 461, 467-468 (1950) the Supreme Court held it was not called upon to decide the question which was raised as a collateral issue where the defendants were convicted of the murder of a victim during the course of an armed robbery.
[5] See Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595 (Sup. Ct. 1949), cert. den. 339 U.S. 924, 70 S.Ct. 614, 94 L.Ed. 1346 (1950); Commonwealth v. Thomas, 382 Pa. 639, 117 A.2d 204 (Sup. Ct. 1955); People v. Harrison, 176 Cal. App.2d 330, 1 Cal. Rptr. 414 (Ct. App. 1959); People v. Podolski, 332 Mich. 508, 52 N.W.2d 201 (Sup. Ct. 1952), cert. den. 344 U.S. 845, 73 S.Ct. 62, 97 L.Ed. 657 (1952).