The State of Ohio, Appellee, *v.* Chambers, Appellant.

[Cite as State v. Chambers (1977), 53 Ohio App. 2d 266.]

(No. 2514—Decided June 8, 1977.)

*Mr. Joseph R. Grunda,* prosecuting attorney, and *Mr. Ernest E. Hume,* for appellee.

*Mr. Gerald A. Innes,* for appellant.

Bell, J. James Chambers, defendant-appellant, seeks a reversal of his conviction for the crimes of involuntary manslaughter and aggravated burglary. The facts are as follows.

On September 17, 1976, defendant and a confederate, Jessie Hicks, broke into and ransacked the residence of Donald Stanziano. While Hicks and Chambers were still in the home, the owner and members of his family returned from a shopping trip. Hearing noises emanating from the house, Stanziano obtained a revolver from his car, entered the residence through the rear or kitchen door and ordered whoever was inside to surrender. Both Hicks and Chambers entered the kitchen. Each came from a different doorway. Defendant Chambers made no immediate overt move when he entered the room. Hicks, however, hesitated but momentarily, then with fists, clenched and raised, rushed

upon Stanziano who still held the revolver pointed generally toward both men. Hicks knocked the homeowner aside and both he and Chambers ran through the kitchen door to the outside. Regaining some balance, Stanziano fired at the exiting pair and mortally wounded Hicks. Chambers was arrested after an investigation and search by the local police. He was thereafter indicted, tried and convicted on the two count indictment. His conviction leads to the present appellate proceedings.

For his defense at trial, defendant contended that he was not present at the time and place aforementioned and offered witnesses to establish his alibi.

Defendant assigns the following as error:

"1. The trial court erred in not granting defendant's motion for acquittal at the conclusion of the State's evidence as to the charge of involuntary manslaughter.

"2. The trial court erred in not granting defendant's motion for judgment notwithstanding the verdict and for a new trial as to the charge of aggravated burglary."

### Assignment of Error I

In discussing this claim of error, we first set forth the wording of R. C. 2903.04(A) (sections B and C are not involved here and are omitted).

"No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

The thrust of this claim is that, on the basis of the state's evidence presented in its case in chief, the defendant cannot be found guilty of the crime charged; consequently, an acquittal should have been directed at that stage in the trial proceedings.

Thus, our question is: Can an accused be convicted of involuntary manslaughter under an Ohio statute where factual circumstances indicate that the accused and an accomplice joined in the commission of a felony and, during the commission thereof, the victim of the felony shot and killed the accomplice?

Translated into the form of the statute, that question becomes: Did Chambers cause the death of Hicks as a di-

rect result of Chambers' commission of the aggravated burglary? To answer this, we first look to the statute itself, its wording and meaning.

R. C. 2903.04 is one of those which came into being with the recodification of our criminal code in 1974. It differs from the former statute relating generally to the crime of manslaughter in the first degree (former R. C. 2901.06) as a study of the two indicates. Thus, our interpretation of the new code section and its meaning is not assisted by past precedent in this state.

Case law and other text material firmly establish the existence of two opposing doctrines on the question of the criminal responsibility of an accused under facts similar to those in the instant case. One or the other of these doctrines is applied in each of the cases reviewed herein. *State* v. *Burton* (1974), 130 N. J. Super. 174, 325 A. 2d 856, and *State* v. *Canola* (1975), 135 N. J. Super. 224, 343 A. 2d 110, discuss the court's interpretation of the New Jersey statute relating to felony murder.

We draw attention to these cases because in each a discussion of the opposing theories of criminal responsibility is included. The New Jersey court divides these views into two broad categories. The first (designated the "agency" theory) is explained as follows:

"The agency theory, simply stated, seeks to hold a defendant responsible when the act of killing is either that of defendant or someone acting in concert with him." *State* v. *Burton, supra,* at 177, 325 A. 2d 858:.

The other viewpoint (designated the "proximate cause" theory) is explained as follows, at 177, 325 A. 2d 858:

"The proximate cause theory states that a defendant may be held accountable for the proximate consequences of his activities and *that a foreseeable consequence may be a killing by one resisting the felony.*" (Emphasis added.)

In determining which of these opposing viewpoints apply in Ohio, we must look to our statute and determine the intent of the legislature in writing it.

The wording of the statute indicates an intent to adopt the proximate cause standard. The use therein of the words "cause" and "result" substantiate this rationale. In this connection we refer again to the previously cited New Jersey cases and note that the wording of that state's enactment is similar to our own.

"If any person, in committing or attempting to commit [certain enumerated felonies and unlawful acts against the peace of the state] of which the probable consequences may be bloodshed, kills another, *or if the death of anyone ensues from the committing or attempting to commit any such crime or act* * * * then such person so killing is guilty of murder." (Emphasis added.) N. J. S. A. 2A-113-1.

Although admittedly the statute immediately above charges murder, the so-called "ensues clause" is construed to indicate a legislative intent to adapt New Jersey law to the confines of the theory of proximate cause notwithstanding the class of homicide. While it is not precedent for this court, the New Jersey courts' interpretation of their statute sheds light on our own due to the similarity in wording.

We hold that a proper interpretation of the Ohio statute necessitates our finding that, in enacting R. C. 2903.04, the legislature intended to follow the theory of proximate cause rather than the theory of agency as the underlying basis of criminal responsibility under that statute.

Having established a basic tenet of liability, a further discussion of the facts is in order.

To rule on defendant's motion, the trial court must construe the facts and evidence most favorable for the state. Taken at its best, the state's evidence tends to show that Chambers and Hicks illegally broke and entered the personal dwelling of the Stanziano family and, having done so, they proceeded to take or attempted to take certain items of value. The evidence establishes the commission of a felony by defendant and his associate.

The evidence is also sufficiently clear to establish that, at the time Mr. Stanziano entered the home, the felonious activities of the housebreakers were still in progress

and that the two men were surprised at their work by the entrance of the homeowner. Stanziano's order to "Come out with your hands up" brought to a conclusion their immediate search for whatever goods they .desired. Again, considering the evidence in a light most favorable to the state for the purpose of the motion, the criminal activities of Chambers and Hicks turned from acquisition to flight.

The evidence before the trial court was correctly interpreted as indicating that the crime of burglary originally put into motion by Chambers and Hicks did not terminate with their entrance into the kitchen. The sequence of events, from the rummaging of the house to the action by Hicks against Stanziano, was uninterrupted. Though defendant made no assaultive move toward the homeowner, it was by virtue of his confederate's action that he and Hicks joined in exiting the house. The entrances into the house, the search for goods, the confrontation with Stanziano, the escape (and attempted escape) from the premises are all a part of the original felonious act. *Conrad* v. *State* (1906), 75 Ohio St. 52; *State* v. *Habig* (1922), 106 Ohio St. 151. This being so, we readily perceive that the death of Hicks might fairly be considered as taking place during the commission of the felony burglary and as a direct and proximate result of the commission of the crime as we shall later note.

For the court to so rule, logic dictates that we test our result from the standpoint of not only a definition of the words "proximate result" but also a determination of whether the end result—the death of Hicks—was a foreseeable circumstance.

We conceive few dangers, faced by the law-abiding public, to be more extreme than the unlawful entrance of one person into a residence occupied by another. The risk of actual serious physical harm to a victim or wrongdoer, the threat of surprise of one by the other, the natural inclination of the victim, if present, to protect and defend his abode and his family are all factors too clear to discuss further. To imagine that the risk of physical harm is not foreseeable under the circumstances surrounding

this case defies not only logic but also the characteristics of the human animal. In the instant cause, add to the equation the fact of an actual confrontation with an armed homeowner, the fact that both Hicks and Chambers approached Stanziano from different doorways, and the fact that, although only Hicks rushed the homeowner, both men rushed for and went out the door. We can only conclude that the death of Hicks could be considered by the trial court as being the proximate and foreseeable result of the commission or attempted commission of a felony.

But, it is asked, how could the actions of the defendant be the cause of the death of his confederate? We hold, in this connection, that the word "cause" as used in R. C. 2903.04 means *proximate cause*. Thus, although we have supported the trial court's judgment that the death *resulted* from the felony, we have yet to answer the question of whether the actions of Chambers directly and proximately *caused* the death of Hicks. After all, it can readily be argued that Stanziano fired the gun, Chambers did not, and Chambers' actions were not assaultive in nature toward Stanziano as were the acts of Hicks.

Answering the last question, we repeat our holding that the intent of the Ohio statutory law places criminal responsibility on the theory of proximate cause and not that of criminal agency. Again, then, we look to other states as well as our own. *State* v. *Ross* (1961), 87 Ohio Law Abs. 379, defines proximate cause and its interrelationship to the homicide itself as establishing liability therefrom. So too do *Jackson* v. *State* (1920), 101 Ohio St. 152, and *State* v. *Schaeffer* (1917), 96 Ohio St. 215. *People* v. *Podolski* (1952), 332 Mich. 508, 52 N. W. 2d 201, discusses the likelihood that each victim will use deadly force against the robber or burglar and holds that the robber or burglar is liable for the end result of the use of retaliatory force by the victim.

In *State* v. *Canola, supra,* headnote 8 of 343 A. 2d 110, states:

"Under 'proximate cause theory' when a felon sets in motion a chain of events which were or should have been

within his contemplation when motion was initiated, felon and those acting in concert with him, should be held responsible for any death which by direct and almost inevitable consequences results from the initial criminal act."

The same theory (in similar words) is also stated in *Commonwealth v. Almeida* (1949), 362 Pa. 596, 68 A. 2d 595, and *Commonwealth v. Moyer* (1947), 357 Pa. 181, 53 A. 2d 736. An original discussion of this subject is seen first in Beale, *Recovery for Consequences of an Act*, 9 Harv. L. R. 80 (1896), and a later discussion is found in Beale, *The Proximate Consequences of an Act,* 33 Harv. L. R. 633, 646 (1920). *Almeida* (subsequently overruled, on the basis of Pennsylvania's approval of the agency theory, by *Commonwealth v. Redline* [1957] 391 Pa. 486, 137 A. 2d 472), after stating the principle restated in *Canola, supra,* states, at 602, 68 A. 2d 599:

"For any individual forcibly to defend himself or his family or his property from criminal aggression is a primal human instinct. * * * Every robber or burglar knows when he attempts to commit his crime that he is inviting dangerous resistance."

This case, at 604, 68 A. 2d 600, further cites Wharton on Homicide regarding causal connection, as follows:

" '[O]ne whose wrongful act hastens or accelerates the death of another, or contributes to its cause, is guilty of homicide, though other causes co-operate. And he is guilty *if his act was the cause of death; if the relation was causal,* and the injured condition was not merely the occasion upon which another cause intervened not produced by the first injury, or related to it in any other than a causal way, then the person inflicting the injury is guilty of homicide.' "

Having found that the Ohio legislature intended to adopt the proximate cause theory of criminal liability, as to R. C. 2903.04, we hold that when a person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and

reasonably inevitable consequences of death resulting from his original criminal act.

It is further our opinion, based on the foregoing discussion, that the trial court correctly decided the defendant's motion for dismissal made at the end of the state's case.

We reject assignment of error one.

*Assignment of Error II*

Similary, we reject assignment of error two. Defendant's argument on this claim is primarily founded upon the weight of the evidence. Considering that which has been stated above, we find the state of the record to be such that the triers of the fact were warranted in reaching the conclusion they did in finding the defendant guilty of the crime of aggravated burglary. This being so, the court did not err in refusing the motion for new trial under Crim. R. 33(A); *State* v. *Reichert* (1924), 111 Ohio St. 698; *Landis* v. *Kelly* (1875), 27 Ohio St. 567.

Finding as we have as to both assignments of error, we affirm the judgment.

*Judgment affirmed.*

MAHONEY, P. J., and VICTOR, J., concur.