JOURNAL ENTRY AND OPINION
Defendant-appellant Irie Mullins appeals from his conviction for felonious assault (R.C. 2903.11) following a bench trial claiming the evidence was insufficient to sustain the conviction and the trial court imposed an excessive fine of $15,000 without following statutory guidelines. We find no reversible error and affirm.
This case arose from an altercation which occurred on July 5, 1997, in which the alleged victim, James Yeager, broke his hand in the course of a fight with the defendant.
Margaret Mullins testified that she was married to the defendant for a total of nine years. The victim, James Yeager, was her first husband to whom she was married for eighteen months. After their marriage ended they continued to live together until she met the defendant. Yeager, however, remained close to Margaret and her two daughters, who considered Yeager as their father and Margaret helped Yeager raise his two sons. At the time of the incident, she was in the process of divorcing the defendant. Defendant was at her house for the sole purpose of fixing his broken down truck. Margaret had a temporary restraining order against the defendant, but permitted him to be on the premises to fix the truck.
Yeager came over to the house to take Margaret's fifteen-year-old daughter Nicole to the movies. Margaret was in the house when she heard her daughter scream. When she looked outside she saw the defendant punch Yeager in the face; heard him order Yeager off of his property. Margaret went outside and grabbed the defendant and told him to stop, but the defendant continued swinging at Yeager and yelled, "I want you off my f____n property or I'm going to kill you bastard." She said that the entire time Yeager was trying to back away, but defendant continued fighting. Yeager then told the defendant that "if we got to dance we're going to dance." The defendant then shoved Margaret off and chased Yeager into the street and the two men began swinging at each other. She said she saw defendant fall to the ground and Yeager put his hand on the defendant's shoulder and asked him to back off so that Yeager could leave. The defendant, however, got up so Yeager shoved him against a car parked in the street. At that point, defendant broke loose, ran into the house and came out with a baseball bat. Margaret followed the defendant through the house pleading with him to give her the bat. When they came back out, Yeager was hugging Nicole and trying to get on his motorcycle. Yeager's left leg was up and getting ready to straddle the bike and defendant was holding the bat up over his shoulder getting ready to swing it when he had to readjust his position so he would not hit the post. When he attempted to swing again, Margaret grabbed the bat. She said if she had not grabbed the bat, it would have "smacked me dead in my face." (Tr. at 43). She clarified that the bat would not have hit Yeager since she was standing between the two men. (Tr. at 44). After grabbing the bat she told the defendant to leave and called the police.
Margaret's daughter, Nicole Coates, fifteen years old, testified that Yeager is like a father to her and has taken care of her since she was little. On the day in question, Yeager came over to take her to a movie. She said that he had his arm around her and they were walking to his motorcycle when the defendant jumped over the banister of the porch and slapped Yeager on the side of the head. Nicole said that at this time, Yeager was wearing his motorcycle helmet. Yeager asked the defendant what his problem was and defendant told him to "get off of his f____n porch." According to Nicole, Yeager tried to leave at that point and was trying to get on his motorcycle, but defendant would not let him. Yeager then punched defendant in the face and the defendant fell to the ground. Nicole said that the defendant got up and ran into the house and returned with a baseball bat. She said that defendant swung the bat at the defendant once, but missed, and then swung again, but her mother caught the bat. (Tr. at 130, 160). Nicole said her mother then pulled the bat away and told the defendant to leave. She said that Yeager left, but the defendant stayed. Later on, while she was in the bathroom, she heard the defendant say loudly to her two-year-old niece that "if my mom didn't grab that bat he would have killed the MF-er." (Tr. at 135).
The victim, James Yeager, testified that as he was talking to Nicole on the porch; the defendant jumped up on the porch and punched him in the side of the head. He said he was struck partially on his helmet and partially on his right ear and neck. Yeager said that the defendant was screaming at him. Yeager tried to get to his motorcycle, but the defendant blocked him. He said that Margaret came out and tried to pull the defendant away. He told the defendant if he ever touched him again he would put him in jail. However, the defendant would not back off and continued yelling and coming at Yeager. He told Yeager he was going to kill him. Yeager repeatedly told the defendant to let him leave. Eventually, Yeager said he told him that if he was not going to let him leave, "they might as well dance." At that point, they were in the street where defendant lunged at him several times, missing him. Yeager then hit the defendant on the side of the face and slung him to the ground. Yeager then put his hand on the defendant's shoulder and the defendant yelled "get off me," and came up with such force that Yeager again hit him two more times. The defendant then tried to strangle Yeager and Yeager pushed him against a car parked on the street. The defendant, after again trying to hit Yeager, ran into the house. Yeager thought the fight was over and tried to calm Nicole down and was in the process of getting on his motorcycle when the defendant returned with a baseball bat. He said the defendant tried to swing at him, but Margaret blocked his swing. The defendant then swung again, but Yeager ran. Yeager said that somehow Margaret got the bat away from the defendant.
Yeager then got on his motorcycle and drove away. As he was on the highway, his right hand began to hurt. He later discovered his hand was broken. As a result he was off work for twenty weeks. Yeager testified that prior to the incident he received threatening phone calls from the defendant.
On behalf of the defendant Julio Fontanez testified that he was working on his house next door when he heard the defendant and Yeager exchange words while Yeager was on the front porch. He then saw the men hitting each other. He tried to break them up and the defendant eventually went into the house and came back out with a bat. He said he never saw the defendant swing the bat at Yeager. Instead, he said that Margaret took the bat away and that he told Yeager to leave and Yeager got on his motorcycle and left.
Juanita Fontanez testified she heard the men arguing while she was in her kitchen next door. When she came out she saw her husband trying to separate the two fighting men. She said she saw the defendant with a bat, but never saw him raise it. She said that Margaret took it away from him.
Charles McMullin also a neighbor of the defendant's, testified that he saw the men scuffling and arguing in the driveway and that it proceeded to the street. He saw defendant go to his backyard and then come back. He did not see a bat, but there was a three to four foot hedge blocking his view.
Defendant testified in his own behalf. He claimed that he was the one that raised Margaret's girls and was like a father to them. He stated that on the day in question he was working on his truck when he saw Yeager hugging Nicole and told him to get off of his property. In response, he said that Yeager tried to punch him, but he blocked the punch and hit Yeager. They kept arguing and Yeager eventually called him out to the street to fight. He was knocked down and kicked by Yeager. The defendant felt he did not stand a chance since Yeager was wearing a helmet, so he went inside to get a bat. He claimed he never raised the bat, but kept it at his side, and that Margaret took it away. The defendant admitted that he had a temper. He also admitted that several months prior to the incident he had left an angry message on Yeager's answering machine.
The court convicted the defendant of felonious assault finding sufficient evidence for either option included in the indictment, i.e., causing serious physical harm and attempting or causing physical harm by means of a deadly weapon.
The court sentenced the defendant to community control sanctions for five years; required him to pay the victim for out of pocket expenses and any other restitution; required him to report to the intensive supervision probation unit; participate in AA meetings; maintain full-time employment so he can make the victim financially whole; and have no contact with the victim or Ms. Mullins or the children unless the Domestic Relations Court determines otherwise. The court then stated, "Mr. Mullins I am also imposing a fine of fifteen thousand dollars ($15,000.00), court costs and supervision fee of five hundred dollars ($500.00); one hundred dollars ($100.00) for each year of your community control."
This delayed appeal ensued.
We will address defendant's assignments of error in the order presented.
 I. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF FELONIOUS ASSAULT PURSUANT TO R.C. § 2903.11.
The standard of review we must observe in passing on sufficiency of the evidence was set forth as follows by the Supreme Court of Ohio in State v. Thompkins (1997), 78 Ohio St.3d 380,386:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29 (A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict, is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
The trial judge found the State proved its case pursuant to both options of the felonious assault statute R.C. 2903.11, which reads in pertinent part:
(A) No person shall knowingly:
 (1) cause serious physical harm to another or to another's unborn.
 (2) cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance.
Defendant contends he cannot be found guilty because the evidence suggests the victim broke his own hand when he struck the defendant. The victim testified he does not know when during the course of the attack he broke his hand. He felt pain only later driving away. However, the trial court credited the victim's testimony that he was acting in self defense in responding to the defendant' s attack.
Defendant disputes whether he can knowingly cause harm that was not caused by his own blow. R.C. 2901.22 (B) defines "knowingly" as follows:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
As the court in State v. Woodhall (May 29, 1996), Summit App. No. 17551, unreported at 2 held, "a natural consequence of engaging in a fist fight is serious physical harm to one or more of the parties involved." Therefore, regardless of the fact that the victim injured his hand while striking the defendant, this injury was the result of the defendant's conduct in starting the fist fight and refusing to cease when the victim so requested. A defendant is responsible for the rational and logical consequences of his conduct. State v. Chambers (1977), 53 Ohio App.2d 266,272; State v. Garland (1996), 116 Ohio App.3d 461,468. The injury sustained to the victim's hand was well within the scope of the risk created by the defendant's assault on him.
Defendant also argues that the evidence does not support the trial court's finding that he attempted to cause harm to the victim with a baseball bat. "Attempt" is defined by R.C. 2923.02
(A) as:
 No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense.
In State v. Woods (1976), 48 Ohio St.2d 127, vacated in part on other grounds, Woods v. Ohio (1978), 438 U.S. 910, the Ohio Supreme Court explained that a person is guilty of criminal attempt when the person:
 purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.
In the case herein, both Nicole and Yeager testified that the defendant swung at Yeager twice with the bat, but missed. Once because Margaret caught the bat and once because Yeager stepped back. Although Margaret testified that the bat was only swung once and that it would have hit her and not Yeager, she also testified that the defendant swung the bat at Yeager. These three witnesses also testified to the fact that the defendant had made threats to kill Yeager and Nicole testified that she heard the defendant yell afterwards that if Margaret had not grabbed the bat he would have killed Yeager. Defendant's threats to kill Yeager during the fight and his statement made afterward along with his swinging the bat at Yeager all constitute sufficient evidence that the defendant was attempting to cause Yeager serious physical harm with the bat.
Defendant's Assignment of Error I is overruled.
 II. THE TRIAL JUDGE ASSESSED THE APPELLANT WITH AN EXCESSIVE FINE OF $15,000.00 WITHOUT FOLLOWING STATUTORY GUIDELINES.
Defendant argues the trial court did not follow statutory guidelines because it did not hold a hearing to determine defendant's ability to pay, and it imposed the maximum fine, mistakenly ordering a "fine" to be paid, rather than restitution.
First, a trial judge is not required to hold a hearing before imposing a fine as a condition of probation. State v. Meyer
(1997), 124 Ohio App.3d 373, 374, following the Eighth District Court of Appeals decision in State v. Johnson (1995), 107 Ohio App.3d 723. In fact, R.C. 2929.18 (E) states that holding a hearing is discretionary:
 a court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it.
Second, the trial court was told by defense counsel that defendant has had a good job for twenty-two years and that his client could make restitution if placed on probation rather than sentenced to prison. The presentence investigative report also detailed the defendant's employment history and financial condition. This information stated the defendant's income and his debt. Therefore, the trial court had sufficient information before it on which to base a fine. Furthermore, as this Court inState v. Frazier (Oct. 9, 1997), Cuyahoga App. No. 71675-78, unreported held: "Where the offender does not object at the sentencing hearing to the amount of the fine, he waives any objection to the fine on appeal." Id.
Lastly, defendant argues the court mistakenly ordered a fine paid rather than restitution. However, a review of the sentencing transcript reveals the court was acutely aware that there was a presumption of incarceration for a felonious assault because it is a felony of the second degree. The court placed defendant on community control sanctions for five years. The court then ordered reimbursement of the victim's out-of-pocket expenses. The court had just heard from Mr. Yeager and understood the restitution amount to be $1,066. He ordered intensive probation twice per week; participation in AA meetings; full-time employment to make Mr. Yeager financially whole; and no contact with the victim or family. (Tr. at 382-83). Finally, after all of that, the court then stated, "Mr. Mullins I am also imposing a fine of fifteen thousand dollars ($15,000.00) court costs and supervision fee of five hundred dollars ($500.00); one hundred dollars ($100.00) for each year of your community control." The sentencing court imposed all of the other sanctions first and took care of the court fines and costs last, rather than impose incarceration. Absent an abuse of discretion, a trial court's imposition of a sentence should not be disturbed. State v. Gipson
(1998), 80 Ohio St.3d 626, 634; State v. Yontz (1986), 33 Ohio App.3d 342,343; State v. Knox (1996), 115 Ohio App.3d 313, 318. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157; State v. Polick (1995), 101 Ohio App.3d 428,431. We find no such abuse here.
Defendant's Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
BLACKMON, J., CONCURS.
 O'DONNELL, J., CONCURS AND DISSENTS. (SEE CONCURRINGAND DISSENTING OPINION ATTACHED).
 _________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE