The STATE of Ohio, Appellee,

v.

WILLIAMS, Appellant.

[Cite as *State v. Williams* (1990), 67 Ohio App.3d 677.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56981.

Decided May 17, 1990.

678

[redacted]

*John T. Corrigan,* Prosecuting Attorney, and *William R. Caine,* for appellee.

*Herbert A. Adrine,* for appellant.

---

ANN MCMANAMON, Judge.

A crowd of between fifteen and fifty people gathered at the corner of Russell and Superior Avenues in the city of Cleveland on Sunday, July 17, 1988. Voices yelled "bum rush" and the group set upon three travelers from Warren, Ohio, beating two of them and killing a third.

In charges stemming from this incident, Anthony Williams was convicted of one count each of involuntary manslaughter (R.C. 2903.04) and aggravated riot (R.C. 2917.02). In three assignments of error,[1] Williams timely controverts the sufficiency and manifest weight of the evidence and contends the trial court erred in its charge of aiding and abetting. Upon review, we affirm the judgment of conviction.

The victims came to Cleveland that Sunday for the annual Rib Burn-off and later visited area bars. Unfamiliar with the city, they drove east on Superior Avenue, believing they would encounter a state route leading home, when a motor scooter pulled into the path of the truck. Daniel Gilmore, who drove the truck, swerved, but could not avoid hitting the front side of the scooter, catapulting its rider into a parked car.

---

1. See Appendix.

The Warren men stopped and emerged from the truck. An argument ensued on the street over liability for the accident. One of the Warren men spotted a local man pouring beer onto the truck's exterior and into the truck bed and cab. Another local man pulled the keys out of the truck's ignition. Gilmore lunged to retrieve the keys and was hit or kicked in the head from behind. Voices then shouted "bum rush"—a street slang expression used to incite an attack—and the crowd began to beat the three travelers.

The largest group focused on Gilmore, striking, kicking and stomping on him. They hit him with forty-ounce beer bottles, sticks and a log. When he was beaten semiconscious and feebly attempting to sit up, two local men ran Gilmore over with his truck. Gilmore died some hours later at Mt. Sinai Hospital.

Williams and a co-defendant, Donnell Younger, were charged with Gilmore's murder, felonious assault upon victims Derrick Walker and Marshall Finch, with violence specifications, as well as aggravated riot. A third defendant, Milton Bridges, was charged only with robbing Gilmore. The jury found Williams guilty of aggravated riot and involuntary manslaughter, a lesser included offense of murder.

In his first, third and fourth assignments of error Williams, in essence, challenges the sufficiency and manifest weight of the evidence. He maintains that he was not present to take part in the rioting and, even if he were a participant, Gilmore died as a result of being run over by two other men in the truck, not as a result of the beatings.

Crim.R. 29(A) provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

A challenge to the sufficiency of evidence requires that we view the matters adduced in a light most favorable to the prosecution and determine whether a rational fact finder could have found all the material elements of the offense beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. Such a review looks to the entire record, all the evidence and reasonable inferences, as well as the credibility of witnesses. It is the responsibility of the trier of fact to evaluate witness credibility. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227

N.E.2d 212. In order to reverse the conviction, the defendant must prove that the circumstantial evidence is not irreconcilable with a reasonable hypothesis of innocence. *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897.

■ Though evidence may be sufficient to sustain a guilty verdict, an appellate court has the power to determine that the verdict is against the weight of the evidence. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. Such a review looks to the entire record and requires the court to weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether there is "such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Davis* (1988), 49 Ohio App.3d 109, 550 N.E.2d 966; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720. A reviewing court will not reverse a conviction where there is evidence substantial enough for the court to decide all elements of the offense were proven beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

The criminal statutes to be analyzed in light of Crim.R. 29 include:

(1) R.C. 2903.01, which provides in pertinent part:

"(A) No person shall purposely, and with prior calculation and design, cause the death of another."

(2) R.C. 2903.04, which relevantly provides:

"(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.

"(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor."

(3) R.C. 2917.02, proscribing, as appropriate:

"(A) No person shall participate with four or more others in a course of disorderly conduct in violation of section 2917.11 of the Revised Code:

"(1) With purpose to commit or facilitate the commission of a felony;

"(2) With purpose to commit or facilitate the commission of any offense of violence."

(4) R.C. 2917.11(A), setting forth that:

"No person shall recklessly cause inconvenience, annoyance, or alarm to another, by doing any of the following:

"(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

"(2) Making unreasonable noise or offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person;

"(3) Insulting, taunting, or challenging another, under circumstances in which such conduct is likely to provoke a violent response;

"(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act which serves no lawful and reasonable purpose of the offender;

"(5) Creating a condition which is physically offensive to persons or which presents a risk of physical harm to persons or property, by any act which serves no lawful and reasonable purpose of the offender."

(5) R.C. 2923.03, which prohibits aiding and abetting:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

" * * * *

"(2) Aid or abet another in committing the offense."

(6) R.C. 2923.03(F) requires that the aider and abettor be prosecuted and punished as a principal. *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, certiorari denied (1988), 488 U.S. 900, 109 S.Ct. 250, 102 L.Ed.2d 238.

At the close of the state's case, the trial court overruled Williams's Crim.R. 29 motions.

■ At trial, the state adduced evidence placing Williams in the crowd which responded to the cry of "bum rush" with fists, kicks, bottles, sticks and a log. Additional testimony revealed Williams participated in the kicking, hitting and stomping of the three strangers. Williams later boasted to friends and neighbors that he would have set fire to the truck had the police not retrieved it first. The Cuyahoga County Coroner determined Gilmore's death to be homicide resulting from a "crushing impact to [the] trunk with fractures and visceral injuries."

We find there was sufficient evidence tending to show that the violent behavior of the crowd disturbed the peace and ultimately caused Gilmore's death, as well as physical injuries to Finch and Walker. Further, the state presented testimony linking Williams to the mob and its turbulent activities.

■ Whether Williams had the intent to kill Gilmore purposely, with prior calculation and design, was a question for the jury and is never a proper question for determination by the court, as a matter of law. *State v. Scott*

(1980), 61 Ohio St.2d 155, 15 O.O.3d 182, 400 N.E.2d 375. A Crim.R. 29 dismissal was therefore inappropriate.

Though the jury did not find Williams guilty of feloniously assaulting Finch and Walker, they concluded he participated in the violence to the extent of committing an R.C. 2917.02 aggravated riot felony of the fourth degree.

Williams presented an alibi defense, contending he arrived on the scene with friends only after the fighting terminated.

Williams's alibi witness claimed he picked up Williams as he drove home from work on July 17, 1988. He told the court that they and two others bought and drank beer all evening until coming upon the scene of the fight on their way to a nearby bar. On cross-examination, however, the witness acknowledged that he never worked on Sundays. As we have noted, July 17, 1988 was a Sunday. It is the province of the jury to evaluate witness credibility. *DeHass, supra.*

We conclude Williams failed to prove his aggravated rioting conviction was not irreconcilable with a reasonable hypothesis of innocence. See *Kulig, supra.*

■ The jury also convicted Williams of involuntary manslaughter, a lesser included offense in the crime of aggravated murder. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph one of the syllabus, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89, 107 L.Ed.2d 54.

We hold that the evidence sufficiently demonstrated that Gilmore's death proximately resulted from the commission of the aggravated riot felony.

■ In the context of involuntary manslaughter, a defendant is liable for the "direct, normal and reasonably inevitable" results of his conduct. *State v. Losey* (1985), 23 Ohio App.3d 93, 23 OBR 158, 491 N.E.2d 379; *State v. Chambers* (1977), 53 Ohio App.2d 266, 7 O.O.3d 326, 373 N.E.2d 393; *State v. Stewart* (May 18, 1989), Cuyahoga App. No. 55398, unreported, 1989 WL 54351.

" * * * [W]hen a person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and reasonably inevitable consequences of death resulting from his original criminal act." *State v. Chambers, supra,* 53 Ohio App.2d at 272, 7 O.O.3d at 329–330, 373 N.E.2d at 397.

A jury could reasonably find that Williams's participation in the mob violence against the three travelers set in motion a sequence of events which could result foreseeably and inevitably in the death of one or more persons. The nature of the inception of the attack made it reasonably foreseeable that

a vengeful and angry mob could ultimately seek retribution by hitting Gilmore with the truck or otherwise. The fact that Gilmore ultimately died from his inability to escape from the path of the truck's crushing impact was also an inevitable result of the mob's activity. We find the evidence was sufficient to sustain Williams's conviction of involuntary manslaughter.

On review of the foregoing, we also conclude that the two convictions are supported by substantial enough evidence for the finder of fact to determine that all the elements of the offenses were proven beyond a reasonable doubt. See *Eskridge, supra.*

We hold that Williams's convictions of aggravated riot and involuntary manslaughter are sustained by sufficient evidence and are not against the manifest weight of the evidence.

These assignments fail.

In his second assignment of error, Williams contends the trial court erred in instructing the jury on aiding and abetting. We note first that Williams's counsel did not object to the instruction.

This court will not review an error not preserved by a timely objection in the trial court. *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220; *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363; *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus; *State v. Lockett* (1976), 49 Ohio St.2d 48, 3 O.O.3d 27, 358 N.E.2d 1062, paragraph five of the syllabus, modified on other grounds in (1977), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973, 9 O.O.3d 26.

We note that, since an aider and abettor is prosecuted as a principal pursuant to R.C. 2923.03(F), we cannot say the inclusion or omission of the instruction in this case would have produced a different outcome.

We find no plain error pursuant to Crim.R. 52(B) and so this assignment of error fails.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DAVID T. MATIA, P.J., and PRYATEL, J., concur.

Judge AUGUST PRYATEL, retired, of the Eighth Appellate District, sitting by assignment.

### APPENDIX

Appellant's assignments of error are:

## I

"Verdict is against the weight of the evidence."

## II

"Prejudicial error for the trial court to instruct the jury as to aiding and abetting of the principals by the defendant."

## III

"Prejudicial error for the court to not withdraw the case from the jury as to the charge of murder as to defendant Anthony Williams."

## IV

"Prosecutor failed to establish a prima facie case as to aiding and abetting beyond a reasonable doubt."