JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Jamal Salett appeals from his convictions for two counts of felonious assault. For the reasons set forth below, we affirm.
 {¶ 2} On July 2, 2004, defendant, his mother, Linda Young, and Charlie Traylor were indicted in connection with an altercation involving Joe Wolforth and Gregory Whitlow. Defendant was charged with two counts of felonious assault for allegedly causing serious physical harm to Whitlow and knowingly causing or attempting to cause physical harm to Whitlow by means of a deadly weapon (a board). Defendant pled not guilty and the matter proceeded to a jury trial on September 13, 2004.
 {¶ 3} The state presented the testimony of Whitlow, and Cleveland Police Officers Daniel Zola, Richard Rusnak, Ronald Phillips, Jim Taylor, and Det. Earl Brown.
 {¶ 4} Whitlow testified that on April 17, 2004, he and Wolforth were at the home of Bilbo Magee on Elizabeth Avenue and were working on a truck. At around noon, two men arrived and began to argue with Wolforth about a fight which had occurred during the previous week. Whitlow announced that the matter did not involve him and that he was leaving in his truck. Defendant stated that "nobody is going nowhere," and parked his car in the driveway, blocking Whitlow's truck. A short time later, a group of defendant's friends arrived. One of the men in this group attacked Wolforth and defendant then joined in the attack.
 {¶ 5} Whitlow tried to break up the fight. He was then struck in the head and became unconscious. When he awoke, blood was everywhere, his mouth was injured, and some of his teeth were on the ground. Whitlow walked to the porch and saw defendant running at him with a wooden board. Whitlow asked defendant what was going on and again explained that he had nothing to do with the altercation. Whitlow's last recollection is of defendant swinging the board at him. Whitlow was again knocked unconscious. When he awoke, he was in an ambulance.
 {¶ 6} Whitlow remained at the hospital for six or seven hours. His head was stapled, his lips were stitched, and his top partial denture had to be replaced.
 {¶ 7} Whitlow identified defendant from a photo array.
 {¶ 8} On cross-examination, Whitlow stated with regard to the first attack that someone struck him while defendant was attacking Wolforth. With regard to the second attack, he stated that he was certain that defendant swung the board at him and that he blacked out immediately thereafter. He stated:
 {¶ 9} "Q. The only thing that you can testify to is that Jamal swung a pole at you and you ducked?
 {¶ 10} "* * *
 {¶ 11} "A. * * * It's not a pole. It's a wooden board. I can testify about that. I would testify that it was in my face and I asked him what he's doing this for. I looked at the pole and asked him why are you doing this? I have nothing to do with this incident. Why, and he swung it." (Tr. 151).
 {¶ 12} Cleveland Police Officer Daniel Zola testified that he responded to the scene and observed defendant beating Whitlow with a large wooden stick "like a lumberjack." (Tr. 173). Defendant was wearing a blue basketball jersey with a white T-shirt underneath. The officer activated the siren of his vehicle and defendant fled. Officer Zola pursued defendant but lost sight of him for two or three seconds. He next observed the defendant again as he jumped a fence. At this point, co-defendant Young began to scream at the defendant, "Jamal, what the fuck is going on?" (Tr. 178).
 {¶ 13} The officer approached and ordered defendant to stop. Young intervened and blocked Officer Zola's path as the defendant jumped a second fence. Officer Zola observed a large dog in the yard and he waited a few minutes until one of Young's family members restrained the dog. Due to the delay, he was unable to apprehend defendant.
 {¶ 14} Cleveland Police Officer Richard Rusnak testified that he responded to the area near Young's home and observed Young arguing with Officer Zola. According to Rusnak, Young was initially uncooperative but later apologized, explaining that she was tired of "dealing with him getting in trouble." (Tr. 224).
 {¶ 15} Officer Rusnak further testified that he went to the scene of the assault and observed teeth on the ground. He also observed that Whitlow's eyes were swollen shut, his face and clothes were covered in blood, and he was bruised.
 {¶ 16} Office Ronald Phillips testified that he also heard Young apologize to Officer Zola. He photographed the scene of the assault, a board, and bloody dental material.
 {¶ 17} Officer Jim Taylor testified that he responded to the scene of the assault and observed the assailant striking Whitlow over the head with a wooden board. According to Taylor, the attacker was wearing a blue basketball jersey with a white T-shirt under it. The assailant fled as the officers approached and Taylor reported to his radio dispatcher that he had gone northbound through backyards. Taylor next attended to Whitlow, who was covered with blood, had broken teeth and appeared to be dead.
 {¶ 18} Cleveland Police Detective Earl Brown testified that he learned defendant's name after conducting various interviews. He instructed Young to have her son turn himself in, but she claimed that she did not know where he was. Later, Whitlow identified defendant from a photo array.
 {¶ 19} Defendant elected to present evidence and presented the testimony of Bilbo Magee, Elkanard Smith, Sheryl Cooper, Joyce Hood, Cynthia Young and Linda Young.
 {¶ 20} Magee testified that Wolforth had gotten into a fight with someone in the neighborhood on April 16, 2004. The next day, while Wolforth and Whitlow were working on a truck, co-defendant Charlie Traylor and "Tez" approached, blocked in the truck and began fighting Wolforth. Whitlow tried to break up the fight and was attacked and knocked unconscious. More men arrived and assisted Traylor and Tez. According to Magee, Whitlow fell down the steps and was beaten by the attackers with part of a ladder. Magee claimed that defendant was not the assailant and was not present during the altercation.
 {¶ 21} On cross-examination, Magee admitted that the man who had been chased by police was one of the men who had beaten Whitlow with the board.
 {¶ 22} Elkanard Smith testified that he saw people walking through backyards toward a "commotion." He then drove to the area and observed a man lying on the ground. Smith stated that the man had a little blood on him "but didn't get hit" and "didn't look bad." (Tr. 298). The man got up and went to his porch. A man with a stick approached him but police arrived and the man fled. According to Smith, defendant was not the assailant and was not present during the attack. Finally, Smith claimed that the man with the stick merely approached but did not strike anyone.
 {¶ 23} On cross-examination, Smith acknowledged that defendant and his mother are his neighbors.
 {¶ 24} Sheryl Cooper testified that she saw defendant standing near a large group of people who were watching a fight on Elizabeth Drive. She asked him what was happening and he told her that "Chuck" and "Denny" were involved in a fight. Cooper observed two men beating another man who was on the ground. She stated that defendant was not involved in the fight. Everyone, including defendant, ran when police arrived, however.
 {¶ 25} On cross-examination, she stated that she did not see a board being used in the attack.
 {¶ 26} Joyce Hood testified that she saw defendant walking toward the commotion. He was wearing a white shirt and jeans. She further testified that he helps her with her work with the Task Force for Community Mobilization.
 {¶ 27} Cynthia Young testified that defendant is her nephew and co-defendant Linda Young is her sister. She and her sister were planning to go to a cookout at 3:30. As they got in the car to go they saw a van coming up the street and someone screamed, "he's got a gun." The women ducked down and a minute later, a police officer approached them and asked questions about the identity of a man who had run through the yard. They told him that they did not see anyone. Cynthia Young further testified that they answered all of the officer's questions truthfully and did not impede the officer in any way.
 {¶ 28} She also testified that her dog was behind a fence in the yard. The officer told her to get the dog, and she attempted to comply, but the dog would not come to her. The officer then threatened to shoot the dog, even though it was not being aggressive. The woman's sister was later arrested and the police entered the house.
 {¶ 29} Co-defendant Linda Young testified that defendant is her son and that she is also a foster parent. She lives in the downstairs unit of the home where she was arrested. Her mother and brother live in the upstairs unit and own a dog. Defendant does not live at this location.
 {¶ 30} On the day of the incident, Young and her sister were to go to a cookout. As they were exiting their driveway, they saw a black van and heard people say that a drive-by shooting was in progress. The women ducked. A police officer approached and asked them about defendant's whereabouts. According to Young, the officer was "in her face" and claimed that defendant had gone into the house. Young indicated that she did not know what the officer was talking about and truthfully answered all of his questions. She stated, however, that he was spitting in her face as he spoke, and she stepped away from him. At this point the officer arrested her and handcuffed her.
 {¶ 31} Young also testified that she did not impede the officer from performing his job and that the dog at no time threatened the officer.
 {¶ 32} On cross-examination, Young stated that she had not seen defendant during that entire day. She also stated that she is a licensed practical nurse but she had no idea why state records could not corroborate this.
 {¶ 33} Following Young's testimony, the court noted that Cynthia Young's testimony had been a surprise to the state and it permitted the introduction of rebuttal testimony of Officer Zola. Officer Zola testified that when he approached Young there was a car in the driveway but no one was in it and Young was yelling at defendant. Young's sister was present but did not get involved. Officer Zola reiterated that Young had accosted him, refused to move the dog and falsely stated that she did not live there.
 {¶ 34} Defendant was convicted of both counts as alleged in the indictment. The trial court merged the offenses for purposes of sentencing and determined that imprisonment was consistent with the purposes of R.C. 2929.11. The court then sentenced defendant to three years imprisonment plus post-release control, including restitution and drug treatment. Defendant now appeals and assigns four errors for our review.
 {¶ 35} Defendant's first and third assignments of error are interrelated and state:
 {¶ 36} "The trial court erred by denying Appellant's motion for acquittal as to Count One of the indictment."
 {¶ 37} "Appellant's due process rights were violated when the trial court erred by instructing the jury regarding aiding and abetting when neither the indictment nor the bill of particulars contained allegations of aiding and abetting."
 {¶ 38} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394.
 {¶ 39} R.C. 2903.11 defines the crime of felonious assault and provides in pertinent part as follows:
 {¶ 40} "(A) No person shall knowingly:
 {¶ 41} "(1) Cause serious physical harm to another;
 {¶ 42} "(2) Cause physical harm to another by means of a deadly weapon."
 {¶ 43} R.C. 2923.03 prohibits complicity with others to commit crimes and provides as follows:
 {¶ 44} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 45} "* * *
 {¶ 46} "(2) Aid or abet another in committing the offense;
 {¶ 47} "* * *
 {¶ 48} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were the principal offender. A charge of complicity may be stated in terms of this section, or in the terms of the principal offense."
 {¶ 49} In State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336,754 N.E.2d 796, the Ohio Supreme Court held that:
 {¶ 50} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or initiated the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." Id. at 245-246.
 {¶ 51} Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. State v. Pruett (1971), 28 Ohio App.2d 29, 34,273 N.E.2d 884. Specifically, when a person sets in motion a "sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and inevitable consequences of death resulting from his original act." State v. Williams (1990), 67 Ohio App.3d 677, 683,588 N.E.2d 180. It is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct. State v. Losey (1985), 23 Ohio App.3d 93, 95-96,491 N.E.2d 379.
 {¶ 52} In this matter, the record reveals that as Whitlow attempted to leave the area, defendant stated that "nobody is going nowhere," and parked his car in the driveway, blocking Whitlow's truck. According to Whitlow, defendant was the "leader of the pack." A short time later, one of the men in defendant's group attacked Wolforth and defendant then joined in the attack. When he awoke, blood was everywhere, his mouth was injured, and his teeth were on the ground.
 {¶ 53} The evidence also demonstrated that when Whitlow awoke, he walked to the porch and saw defendant running at him with a wooden board. Whitlow's last recollection is of defendant swinging the board at him, and ducking to avoid it before again being knocked unconscious. Officer Zola and Officer Taylor also witnessed defendant striking Whitlow with the board. Officer Zola stated that he observed defendant striking Whitlow. Officer Taylor also witnessed the attack. Finally, during his pursuit of defendant, Officer Zola heard Young call defendant by name.
 {¶ 54} In accordance with all of the foregoing, we cannot conclude that the trial court erred in denying the motion for acquittal. Reasonable minds can reach different conclusions as to whether defendant supported, assisted, encouraged, cooperated with the initial attack on Whitlow in light of his presence, companionship and conduct before and after the attack. Moreover, the state was permitted to charge defendant in terms of the principal offense of felonious assault and was not required to charge the defendant in accordance with R.C. 2923.03.
 {¶ 55} Furthermore, although defendant presented evidence that he was not involved in the attack, the state's evidence clearly indicated that defendant was present, that he swung the board at Whitlow and struck him. From the foregoing, we find that reasonable minds could reach different conclusions as to whether defendant knowingly caused physical harm to Whitlow in the attack involving the board. The trial court properly denied the motions for acquittal.
 {¶ 56} The first and third assignments of error are without merit.
 {¶ 57} Defendant's second assignment of error states:
 {¶ 58} "Appellant's convictions were against the manifest weight of the evidence."
 {¶ 59} Defendant next asserts that the jury lost its way in convicting him.
 {¶ 60} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbsv. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652,663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.
 {¶ 61} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 62} Here, the state presented clear, consistent and reliable evidence that defendant was the assailant. Whitlow stated that defendant brandished the board at him, and then swung it. Officer Daniel Zola testified that he observed defendant beating Whitlow with a large wooden stick. Officer Taylor also witnessed the attack. In addition, the state presented evidence that the assailant was identified as "Jamal" during the pursuit.
 {¶ 63} Although defendant presented considerable evidence that he was not involved, his witnesses differed significantly in their versions of events and suffered serious impeachment. Magee testified that defendant was not the assailant and was not present during the altercation. In addition, on cross-examination, Magee admitted that the man who had been chased by police was one of the men who beat Whitlow with the board. Elkanard Smith testified that defendant was not the assailant and was not present during the attack. He stated, however, that Whitlow was not seriously injured, and also claimed that the man with the stick did not strike anyone. Sheryl Cooper testified that defendant was present but did not participate but she admitted that he fled when police arrived. Joyce Hood testified that she saw defendant walking toward the commotion. From the foregoing, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in finding defendant guilty.
 {¶ 64} This assignment of error is overruled.
 {¶ 65} Defendant's fourth assignment of error states:
 {¶ 66} "The trial court erred by denying Appellant's motion for separate trials."
 {¶ 67} Finally, defendant asserts that the state erred in trying him and his mother in the same action.
 {¶ 68} Crim.R. 8(B) provides that two or more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." Crim.R. 14, however, provides for relief from joinder "if it appears that a defendant * * * is prejudiced by a joinder of offenses or of defendants."
 {¶ 69} In general, "the joinder of defendants and the avoidance of multiple trials is favored in the law because joinder `conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses and minimizes the possibility of incongruous results in successive trials before different juries.'" State v. Jennings (June 19, 2000), Stark App. No. 1999-CA-00174. The decision whether to sever defendants from a joint trial rests within the sound discretion of the trial court. State v.Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.
 {¶ 70} In this matter, we are unable to conclude that the trial court abused its discretion. Young and defendant participated in the same course of criminal conduct, yet the evidence pertaining to defendant's conduct was clearly distinguishable from the evidence pertaining to Young's conduct, their defenses were not in conflict and there was no demonstration of prejudice.
 {¶ 71} This assignment of error is overruled.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and McMonagle, J., concur.